UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR SHARRIEFF GAY,<br><br>Plaintiff,<br><br>v.<br><br>JENNIFER SHAFFER, et al.,<br><br>Defendants. | No. 2:19-cv-1471 TLN AC P<br><br><br>ORDER and<br><br>FINDINGS AND RECOMMENDATIONS |

I.  Introduction

Plaintiff is a state prisoner at California Men's Colony (CMF), in San Luis Obispo, under the authority of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff proceeds pro se with a civil rights complaint filed pursuant to 42 U.S.C. § 1983, a request for leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915, and a request for appointment of counsel. Plaintiff also requests that this case be transferred back to the United States District Court for the Central District of California.

This action is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the reasons that follow, plaintiff's request to proceed in forma pauperis is granted, his additional requests are denied, and the undersigned recommends that this action be dismissed without leave to amend.

////

II. Venue Challenge

This case was originally filed in the Central District of California. By order filed July 31, 2019, the Central District transferred the case to this district pursuant to 28 U.S.C. § 1404(a)[1] on the ground that "*all* of the named defendants are employed by the BPH [Board of Parole Hearings] in Sacramento, and all are believed to 'live in the Sacramento area,' which is in the Eastern District of California." ECF No. 5 at 4-5 (original emphasis).

Plaintiff filed a "Notice of Judicial Error" moving for the transfer of this case back to the Central District. ECF No. 10. Plaintiff argues that the events or omissions giving rise to his Claim One occurred at CMC (within the Central District), while the matters giving rise to his Claim Two occurred at the Correctional Training Facility (CTF), in Soledad (within the Northern District). Plaintiff asserts that the Central District can then bifurcate plaintiff's claims, retaining Claim One, and "allowing plaintiff to file Claim Two in the Northern District." Id. at 10. Plaintiff notes that he is currently pursuing a separate civil rights action in the Northern District after the Eastern District granted plaintiff's his to transfer that case back to the Northern District.[2]

Before transferring this case to the Eastern District, the Central District carefully considered the substance of plaintiff's claims and the identity of the named defendants. See ECF

////

////

---

[1] 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

[2] Gay v. Parsons et al., Case No. 3:16-cv-05998 CRB (N.D. Cal.), proceeds, inter alia, on plaintiff's equal protection claim that two BPH psychologists assessed him at high risk for future violence because he is African American and Muslim. Plaintiff commenced the action in the Northern District, which transferred the case to the Eastern District on the ground that plaintiff was incarcerated within this district at California State Prison-Solano, and because "[a] substantial part of the events or omissions giving rise to the claim(s) occurred, and the defendants named reside" within this district. Id. (ECF No. 6). Plaintiff objected to the transfer. Id. (ECF No. 10). By order filed March 21, 2017, the magistrate judge assigned the case granted plaintiff's motion on the ground that the interviews conducted by defendant psychologists and others took place at CTF, within the Northern District, during plaintiff's prior incarceration there. Id. (ECF No. 13). See also Case No. 2:16-cv-2533 GEB CKD P (E.D. Cal.) (prior designation of the case while pending in the Eastern District of California).
(continued...)

No. 5. Giving due weight to the venue considerations set forth in 28 U.S.C. § 1391(b),[3] the Central District found that "there is no indication that a 'substantial' part of the events giving rise to this suit have taken place within the boundaries of the Central District of California, and there is some evidence that the October 2015 events may have taken place in the Northern District of California. On the other hand, as noted by plaintiff, *all* of the named defendant are employed by the BPH in Sacramento[.]" Id. at 4-5. On these grounds and in deference to the convenience of the parties and witnesses and in the interests of justice, the Central District transferred the case to this district pursuant to 28 U.S.C. § 1404(a). Id. at 5.

The undersigned finds the reasoning of the Central District persuasive and, on the grounds stated by that court, will deny plaintiff's transfer request. Moreover, as discussed below, transfer is contraindicated because all the named defendants are immune from suit and plaintiff's claims are without merit, supporting the undersigned's recommendation that this action be dismissed without leave to amend.

### III. In Forma Pauperis Application

Plaintiff has submitted an affidavit and prison trust account statement that make the showing required by 28 U.S.C. § 1915(a). See ECF No. 2; see also ECF No. 9 (plaintiff's Inmate Trust Account Statement). Accordingly, plaintiff's request to proceed in forma pauperis will be granted.

Plaintiff must still pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct

---

[3] 28 U.S.C. § 1391(b) provides:
    A civil action may be brought in –
    (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
    (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
    (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated to make monthly payments of twenty percent of the preceding month's income credited to plaintiff's trust account.  These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

IV.     Screening of Plaintiff's Complaint

A.     Legal Standards for Screening Prisoner Civil Rights Complaints

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).

"A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal quotation marks omitted)). See also Fed. R. Civ. P. 8(e) ("Pleadings shall be so construed as to do justice.").  Additionally, a pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

B.     Plaintiff's Allegations

Plaintiff states that in 1989, a jury found him guilty of attempted premeditated murder, assault with a firearm, and shooting at an occupied vehicle. ECF No. 4 at 16.  He was sentenced to a term of seven years to life imprisonment, plus two years for the firearm enhancement, for a total prison term of nine years to life.  Id.

Plaintiff alleges that on October 31, 2018, at his eighth parole hearing, defendants Troy Taira and Kenneth Allen, both BPH Commissioners, denied plaintiff parole and deferred his next parole hearing for three years under California's Proposition 9, an initiative measure known as the "Victims' Bill of Rights Act of 2008: Marsy's Law." See Cal. Penal Code § 3041.5. In his "Claim One," plaintiff contends that the three-year deferral of his next parole hearing violated his due process and equal protection rights because the legislative intent underlying Proposition 9 sought to apply the challenged deferral period to life prisoners convicted of murder, not to prisoners like plaintiff who received a "non-murder" conviction. Id. at 12; see also id. at 37-8.

Plaintiff also alleges that previously, on October 7, 2015, at his seventh parole hearing, defendants Elizabeth Richardson and Timothy O'Hara, both BPH Commissioners, "set plaintiff's base term and adjusted base term calculation . . . at eleven calendar years and/or 132 months." Id. at 16; see also id. at 44. In his "Claim Two," plaintiff argues that his incarceration, which now exceeds 30 years, violates the Eighth Amendment because "with a 7 years minimum, 11 years base term, and 15 years maximum matrix system for his offense of attempted murder, [he] has 30 years of confinement in comparison with a first degree murderer who has a 17 years minimum and 33 years maximum matrix system." Id. at 29; see also id. at 17.

Plaintiff also names Jennifer Shaffer, the BPH Secretary, as a defendant in both claims. Id. at 3, 30. All defendants are sued in their official and individual capacities.

Plaintiff seeks monetary compensation as well as declaratory and injunctive relief in the form of enjoining the BPH defendants "from any and further acts of excessive confinement; excessive punishment; grossly disproportionate term of confinement of plaintiff (a non-murdered) in comparison with first degree murders." Id. at 31.

        C.     Analysis

As a threshold matter, the BPH is a state agency immune from damages suits under the Eleventh Amendment. See Atascadero State Hospital v. Scanlon, 473 U.S. 234, 237-38 (1985) (Eleventh Amendment bars suits against states in federal court); Wolfe v. Strankman, 392 F.3d 358, 364 (9th Cir. 2004) (as applied to state agencies). Thus, BPH commissioners are state officers entitled to Eleventh Amendment immunity when acting in their official capacities. See

Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). BPH commissioners, who exercise quasi-judicial responsibilities in rendering parole decisions, are absolutely immune from damages liability in their official capacities. See Sellars v. Procunier, 641 F.2d 1295, 1302-03 (9th Cir.), cert. denied, 454 U.S. 1102 (1981); cf. Swift v. California, 384 F.3d 1184, 1186, 1191 (9th Cir. 2004) (parole officers not entitled to absolute immunity for conduct independent of Board's decision-making authority, e.g., performing investigatory or law enforcement functions). Because parole board officials are entitled to absolute immunity when rendering a parole decision, Sellers, 641 F.2d at 1302, and the challenged conduct of defendant BPH officials herein is limited to their decisions impacting plaintiff's parole, plaintiff fails to state a cognizable claim for damages relief against any of the named defendants.

Nor do plaintiff's claims support declaratory or injunctive relief against these defendants or the BPH generally. Plaintiff's Claim One challenge to his three-year deferral period is premised on the argument that the drafters of Proposition 9 intended that the "extended 3, 5, 7, 10, or 15 years of deferments between subsequent parole hearings [be reserved] specifically for 'convicted murderers,'" and are therefore inapplicable to plaintiff. ECF No. 4 at 22. Plaintiff's argument is without merit. Although plaintiff's references to the history and purpose of Proposition 9 support a specific intent by its proponents to delay parole for convicted murderers,[4]

---

[4] Plaintiff has attached an illegible copy of the initiative portion of the 2008 California Voter's Pamphlet, ECF No. 4 at 40-1, which the undersigned has independently reviewed. See http://www.lalawlibrary.org/pdfs/PROP_1108_9.pdf ; see also Fed. R. Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned).

Plaintiff cites the "Findings and Declarations" portion of the initiative, which decried frequent parole hearings and short periods of incarceration accorded to murderers. Plaintiff also cites the initiative's "Statement of Purposes and Intent" which identified the intent to "[i]nvoke the rights of families of homicide victims to be spared the ordeal of prolonged and unnecessary suffering, and to stop the waste of millions of taxpayer dollars, by eliminating parole hearings in which there is no likelihood a murderer will be paroled, and to provide that a convicted murderer can receive a parole hearing no more frequently than every three years, and can be denied a follow-up parole hearing for as long as 15 years." In addition, the "Victims' Bill of Rights" (continued...)

the Proposition itself and resulting California Penal Code sections apply to all hearing deferral periods for all prisoners regardless of commitment offense, subject to "consideration of the public and victim's safety." Cal. Penal Code § 3041.5(b)(3).

"The most significant changes [made by Proposition 9] are as follows: the minimum deferral period is increased from one year to three years, the maximum deferral period is increased from five years to fifteen years, and the default deferral period is changed from one year to fifteen years." Gilman v. Schwarzenegger, 638 F.3d 1101, 1104 (9th Cir. 2011) (citing Cal. Penal Code § 3041.5(b)(3)). In addition, "the burden to impose a deferral period other than the default period increased," although "[t]he Board may exercise its discretion to hold an advance hearing sua sponte or at the request of a prisoner." Id. (citing, respectively, Cal. Penal Code §§ 3041.5(b), 3041.5(b)(4)). Significantly, Proposition 9 eliminated a prior statutory distinction in the maximum deferral periods accorded to prisoners with murder convictions, see Cal. Penal Code § 3041.5(b)(2)(B) (2007) (five years), and prisoners with nonmurder convictions, id. § 3041.5(b)(2)(A) (2007) (two years). The clearly deliberate elimination of this distinction defeats plaintiff's claim that Proposition 9's deferral periods were intended to apply only to prisoners with murder convictions. Plaintiff's due process and equal protection challenges premised on this Claim One are therefore without merit.[5]

---

portion of the initiative provides that "[t]he current process for parole hearings is excessive, especially in cases in which the defendant has been convicted of murder. Id.

[5] Plaintiff's due process and equal protection claims are narrowly drawn. As the Central District accurately noted in transferring this case, ECF No. 5 at 3 n.5:
> With respect to his due process and equal protection claims, plaintiff is careful to point out that he is not raising an issue of "suitability" or "unsuitability" for parole release (Compl. at 11-12 ¶ 10); he is not raising an issue of "some evidence" or "no evidence" with respect to the BPH Panel's October 31, 2018, decision (id. at 12 ¶ 11); he is not raising an issue of retroactive application of Proposition 9 at his October 31, 2018, parole hearing (id. ¶ 12); and he is not raising an issue of "increased punishment as a result of Proposition 9 Marsy's Law extended deferments between subsequent parole hearings" (id. ¶ 13). Instead, he states that "[t]he real question of law being raised . . . is whether or not Defendants (BPH) are administratively carrying out the People of the State of California['s] express intent for the 3, 5, 7, 10, or 15 years parole hearing deferments to be utilized against this non-murder life prisoner in the right spirit and proper letter of the law?" (Compl. at 25 ¶ 67 (internal quotation marks omitted)).

In his Claim Two, plaintiff contends that his current period of confinement violates the Eighth Amendment because it exceeds sentences generally accorded convicted first degree murderers. ECF No. 4 at 17, 29. This comparison fails because the reasons for granting or denying parole are within the sound discretion of the BPH. See Cal. Penal Code. § 3041(b)(1) ("The panel or the board, sitting en banc, shall grant parole to an inmate unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual."). Moreover, the Ninth Circuit has determined, in the context of an ex post facto challenge, that the decreased frequency of scheduled parole hearings implemented by Proposition 9 does not create a significant risk of increased punishment due to the BPH's discretion to advance a hearing "'when a change in circumstances or new information establishes a reasonable likelihood that consideration of the public and victim's safety does not require the additional period of incarceration of the prisoner.'" Gilman, 638 F.3d at 1109 (quoting Cal. Penal Code § 3041.5(b)(4); see also id., subd. (d)); see also Gilman at 1111.

For these reasons, plaintiff's claims for injunctive relief are also without merit. Nor would plaintiff's allegations support a cognizable petition for writ of habeas corpus. Pursuant to the Supreme Court's decision in Swarthout v. Cooke, 562 U.S. 216 (2011), federal courts may no longer undertake substantive federal habeas review of state parole decisions. Federal courts may not intervene in a BPH decision if minimum procedural protections were provided, i.e., an opportunity to be heard and a statement of the reasons why parole was denied. Id. at 219-20. Substantive challenges to parole decisions are no longer cognizable on federal habeas review. See Roberts v. Hartley, 640 F.3d 1042, 1046 (9th Cir. 2011) ("A state's misapplication of its own laws does not provide a basis for granting a federal writ of habeas corpus.").

For these reasons, the undersigned finds that plaintiff's Claims One and Two are substantively without merit in addition to being brought against defendants who are immune from a suit for damages. The court is persuaded that plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state a cognizable claim and, therefore, that this

action should be dismissed without leave to amend. "A district court may deny leave to amend when amendment would be futile." Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1130 (9th Cir. 2013); accord Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) ("Courts are not required to grant leave to amend if a complaint lacks merit entirely.").

V. Motion for Appointment of Counsel

Plaintiff requests appointment of counsel on the grounds that he is indigent, unlearned in the law, and "subjected to undue influence by defendants." ECF No. 1 at 1. The court does not find the required exceptional circumstances supporting appointment of counsel[6] because plaintiff's claims lack merit. His request will therefore be denied.

VI. Conclusion

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's request this case be transferred back to the United States District Court for the Central District of California, ECF No. 10 (entitled "motion seeking notice of judicial error") is DENIED.

2. Plaintiff's request to proceed in forma pauperis, ECF No. 2, is GRANTED.

3. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

////

---

[6] The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases. Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989). In certain exceptional circumstances, the district court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1). Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990). The test for exceptional circumstances requires the court to evaluate the plaintiff's likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983). Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel.

4. Plaintiff's motion for appointment of counsel, ECF No. 1, is DENIED.

Further, IT IS HEREBY RECOMMENDED that this action be DISMISSED without leave to amend for failure to state a cognizable claim.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, plaintiff may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 9, 2019

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE